UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JAMES MCCONICO, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:19-cv-1600-GMB |
| ) | |
| WAL-MART STORES, INC., and ) | |
| GREEN DOT BANK, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James McConico, Jr. filed a *pro se* complaint against Defendants Wal-mart Stores, Inc. ("Walmart) and Green Dot Bank ("Green Dot") for claims arising from the inaccessibility of funds he deposited to a debit card opened through Defendants' money card program. In his second amended complaint, Plaintiff asserts claims for unjust enrichment, negligence, and fraud against both defendants.[1] Doc. 91 at 5–7.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. 8. Before the court are three motions. The first is Plaintiff's motion for partial summary judgment as to his negligence claim. Doc. 99. In response to Plaintiff's motion, Defendants filed a motion to strike the

---

[1] The court agrees with Defendants that Plaintiff abandoned his breach of contract claim through his amendments to his complaint. Doc. 108 at 7 n.2.

evidence attached to Plaintiff's motion. Doc. 107. Defendants also filed a motion for summary judgment as to all claims asserted against them. Doc. 108. After careful consideration of the parties' submissions (Docs. 99, 107, 108 & 109), the applicable law, and the record as a whole, the court finds that Defendants' motion for summary judgment is due to be granted, the motion to strike is due to be granted, and Plaintiff's motion for partial summary judgment is due to be denied.

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The purpose of summary judgement is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

[dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed.*

*for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## II. STATEMENT OF FACTS

Green Dot issues and administers prepaid debit cards ("money cards") for Walmart and its customers. Doc. 109-3 at 2–3. Walmart is an authorized retailer of the money cards, but does not have any control over the administration, service, or maintenance of the cards. Doc. 109-3 at 3; Doc. 109-4 at 1. Instead, Green Dot controls approval and issuance of the money cards; how the cards are used, maintained, and serviced; and any funds deposited in or disbursed from the money card accounts. Doc. 109-3 at 3. Walmart does not have a role in any of these activities. Doc. 109-4 at 1.

Green Dot operates a webpage that allows consumers to apply for the money cards. Does. 109-3 at 3.  Walmart and Green Dot collaborate on the marketing and advertising strategies relating to the money card enrollment webpage. Doc. 109-3 at 3.  Green Dot, however, exclusively publishes and maintains the enrollment webpage and exercises control over its functioning and maintenance. Doc. 109-3 at 3. Walmart does not participate in the administration or operation of the enrollment webpage. Doc. 109-4 at 3.

To be issued a money card, a person must apply and receive approval. Doc. 109-3 at 4.  One way to apply is through the money card enrollment webpage. Doc. 109-3 at 4.  To apply using the webpage, an applicant must enter certain personal information and check boxes to confirm acceptance of the terms of the cardholder agreement governing the money cards. Doc. 109-3 at 4.  Specifically, the wording beside the box to be checked states, in relevant part, "I have read and agree to . . . the Cardholder Agreement (which includes information regarding terms, limits, and fees)." Doc. 109-9 at 2; Doc. 109-10 at 2.  The enrollment webpage will not permit a money card application to be submitted, processed, or approved unless the customer checks the box accepting the terms and conditions of the cardholder agreement. Doc. 109-3 at 4.  The enrollment website also includes a link to the cardholder agreement so that customers can review the agreement before beginning the application process. Doc. 109-3 at 4.  Additionally, on the back of every money

card is the following statement: "This Card is issued by Green Dot Bank . . . . The use of this Card is subject to the terms of your Cardholder Agreement." Doc. 109-3 at 5.

The cardholder agreement explicitly states that it is a contract between the cardholder and Green Dot Bank, "the issuer of [the] Card." Doc. 109-3 at 12. A section of the agreement titled "Using Your Card" explains the personal information cardholders must provide to Green Dot:

> *Personal Information You Will Need to Provide.* To help the government fight the funding of terrorism and money-laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who registers a Card. When you register your Card, we will ask for your name, address, date of birth, Social Security number, phone number and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents. . . . If we are unable to verify your identity, we may choose to permit you to use the Temporary Card until the money on the Temporary Card has been fully spent, but you will not receive a Personalized Card.

Doc. 109-5 at 3. The cardholder agreement also contains a paragraph titled "Limited Liability." Doc. 109-5 at 11–12. This paragraph, written in all capital letters, states, in relevant part and to the extent permitted by law, that in the event Green Dot is held liable to the cardholder, the cardholder "will only be entitled to recover . . . actual damages. In no event shall [the cardholder] be entitled to recover any indirect, consequential, exemplary or special damages (whether in contract, tort or otherwise) . . . . [The cardholder] agree[s] that . . . recovery for any alleged negligence or

misconduct by [Green Dot] shall be limited to the total amount loaded to the card." Doc. 109-5 at 11–12.

On or about August 15, 2017, McConico visited the money card enrollment webpage[2] and applied online for a money card. Doc. 1-1 at 3; Doc. 109-3 at 3. While applying, McConico attempted to review the cardholder agreement, but the webpage froze[3] and he was unable to read the document. Doc. 66 at 6–7. While McConico tried to get the webpage to respond, the website "improperly approved/process[ed] the application" even though he had not read the agreement. Doc. 66 at 7. McConico did, however, check the box stating that he had "read and agree[d] to . . . the Cardholder Agreement." Doc. 109-10 at 2–3. Green Dot issued a money card to McConico on August 15, 2017. Doc. 109-3 at 5; Doc. 109-12 at 2–3.

Because McConico is incarcerated, he had his money card sent to his "family home residence" to be used for purchasing items for his grandchild. Doc. 1-1 at 3. In approximately June 2018, McConico's mother lost the card while the account had a balance of approximately $1,200.00. Doc. 1-1 at 4; Doc. 109-12 at 4 & 11. On

---

[2] During 2017, Green Dot published two versions of the money card enrollment webpage. Doc. 109-3 at 3. They were not published simultaneously (Doc. 109-3 at 3), and the record does not establish which version of the webpage was live when McConico applied for the money card. Regardless, the technical features of the two webpages were the same in all material respects with design changes relating only to marketing and business strategies. Doc. 109-3 at 4.
[3] The court notes that McConico alleged in one version of his complaint that he received an error message when he tried to read the cardholder agreement. Doc. 48-1 at 2.

June 5, 2018, the money card was reported lost or stolen, and Green Dot issued a replacement money card. Doc. 109-12 at 4 & 11.  On June 30, 2018, and on July 1, 2018, another change of address was requested and the card again was reported lost or stolen. Doc. 109-12 at 4 & 11.  Green Dot issued a second replacement card on July 1, 2018. Doc. 109-12 at 4 & 11.

On July 2, 2018, Green Dot detected unusual activity relating to McConico's money card and locked the account. Doc. 102-12 at 4 & 12.  Green Dot then requested that McConico provide an image of his government identification to unlock the money card. Doc. 109-12 at 4 & 12.  On July 25, 2018, McConico contacted Green Dot about the account. Doc. 109-12 at 4 & 12.  He asked Green Dot to activate his replacement card or close his account and mail him a check for the account balance. Doc. 1-1 at 4; Doc. 109-12 at 4 & 12.  The agent told him that he had to submit a picture of a government-issued identification and that the account would remain locked until Green Dot received his identification. Doc. 109-12 at 4–5 & 12.  McConico explained that he was incarcerated and could not provide a government-issued identification, but Green Dot insisted on the identification in accordance with the terms of the cardholder agreement. Doc. 1-1 at 4.

On June 23, 2020, Green Dot issued a check in the amount of $1,266.75, payable to McConico. Doc. 109-12 at 5 & 14.  The value of the check corresponded

with the balance in McConico's account. Doc. 109-12 at 5. The check was cashed or deposited on July 17, 2020. Doc. 109-12 at 5 & 14.

### III. DISCUSSION

As stated above, McConico's second amended complaint, as construed by the court, asserts three claims against Walmart and Green Dot: unjust enrichment, negligence, and fraud. The court addresses the claims separately below and concludes that summary judgment is proper as to all claims against both defendants.

**A.    Unjust Enrichment**

To establish unjust enrichment under Alabama law, McConico must establish that the (1) defendants knowingly accepted or retained a benefit (2) provided by another (3) who had reasonable expectation of compensation. *Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008). "No cause of action for unjust enrichment is cognizable where . . . there is an express contract between the parties." *Wells Fargo Bank v. Trotman*, 940 F. Supp. 2d 1359, 1369 (M.D. Ala. 2013). McConico's unjust enrichment claims against both Green Dot and Walmart fail as a matter of law.

*1.    Green Dot*

McConico's unjust enrichment claim against Green Dot fails because the undisputed evidence establishes that there was an express contract between McConico and Green Dot. "The requisite elements of a valid contract include: an

9

offer and an acceptance, consideration, and mutual assent to terms essential to the formation of the contract." *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So .2d 1111, 1118 (Ala. 2003) (citations, brackets, and internal quotation marks omitted); *see also Macon County Greyhound Park, Inc. v. Knowles*, 39 So. 3d 100, 107 (Ala. 2009). McConico contends that he did not assent to the essential terms of the agreement because he could not read the cardholder agreement. The court disagrees.

"Today, virtually every Internet user is familiar with what have become known as clickwrap agreements—agreements formed by requiring a computer user to consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with a transaction." *Bazemore v. Jefferson Capital Sys.*, LLC, 827 F.3d 1325, 1327 (11th Cir. 2016) (internal quotation marks and citation omitted). While few Alabama state courts have addressed clickwrap agreements, Alabama contract law principles support their enforceability. "Under Alabama law there is no requirement that a contract contain a signature to demonstrate assent; the existence of a contract may be inferred from external and objective manifestations of assent." *Conference Am., Inc. v. Conexant Sys., Inc.*, 508 F. Supp. 2d 1005, 1014 (M.D. Ala. 2007).

Although McConico maintains that he was unable to read the cardholder agreement, he admits that he checked the webpage's box indicating that he had read and agreed to the terms of the cardholder agreement. Doc. 109-10 at 2–3. By doing

so, McConico provided an external and objective manifestation of assent to the contract. Accordingly, the court finds that a valid contract was formed between McConico and Green Dot. The existence of this contract precludes any unjust enrichment claim against Green Dot. *Trotman*, 940 F. Supp. 2d at 1369. Summary judgment is, therefore, due to be granted in favor of Green Dot as to McConico's unjust enrichment claim.

### 2. *Walmart*

As explained above, the essence of the theory of unjust enrichment is that a plaintiff can prove facts showing that a defendant holds money which, in equity and good conscience, belongs to the plaintiff, or otherwise holds money improperly paid to the defendant because of mistake or fraud. *Portofino Seaport Village*, LLC, 4 So. 3d at 1098. Here, there is no evidence that Walmart ever received any money from McConico. Instead, the undisputed evidence establishes that Green Dot was in control of and held all money paid by McConico. Doc. 109-3 at 3. For this reason, Walmart has not been unjustly enriched as a matter of law and summary judgment is due to be granted as to this claim.

### B. Negligence

"Under Alabama law, there are four elements to establish a case of negligence . . . : (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Edmonson v. Cooper Cameron Corp.*, 374 F. Supp. 2d 1103, 1106 (M.D. Ala. 2005). While his

claims are somewhat opaque, McConico seems to assert a myriad of negligence claims against both Green Dot and Walmart. He first contends that Green Dot was negligent in its servicing of his money card. Doc. 66 at 8. He also alleges that Green Dot was negligent in the maintenance of the enrollment website. Doc. 66 at 8. Finally, he seems to allege negligent supervision claims against both Green Dot and Walmart. *See* Doc. 66 at 6–12.[4] Defendants are due summary judgment on all of these claims.

### 1. *Green Dot*

McConico's claims that Green Dot was negligent in the servicing of his money card by requiring his identification or by refusing to release his account's funds fail as a matter of law. First and foremost, Green Dot acted in accordance with the cardholder agreement when it required identification from McConico in light of the suspected fraudulent activity. Second, McConico's claim sounds in contract, but

---

[4] While earlier iterations of his complaint alleged a negligent misrepresentation claim, McConico's second amended complaint appears to omit such a claim. However, to the extent McConico's amended complaint can be read to plead a negligent misrepresentation claim against Green Dot and Walmart, those claims fail. To establish negligent misrepresentation under Alabama law, McConico must prove (1) that a false representation was made, (2) that it concerned a material fact, (3) that the plaintiff reasonably relied on the false representation, and (4) that actual injury resulted from that reliance. *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1325 (N.D. Ala. 2019). There is no evidence in the record that Green Dot or Walmart made a false representation. Instead, the evidence shows that Green Dot followed the cardholder agreement, and McConico's contention that he could not read that agreement is immaterial to any alleged misrepresentation. "[T]o the extent that [McConico's] claims are based on representations made by [Defendants] that accurately reflect [the cardholder agreement], plaintiff has not stated a claim for . . . negligent misrepresentation because there has been no false representation." *Fowler v. Provident Life & Accident Ins*. Co., 256 F. Supp. 2d 1243, 1247 (N.D. Ala. 2003).

Alabama law does not recognize negligence claims predicated on a breach of contract. *See Liveoak v. LoanCare*, LLC, 2019 WL 5864139, at *2 (N.D. Ala. Nov. 8, 2019) ("Alabama law does not recognize claims of negligence arising out of breach of contractual duties."). "[C]ourts sitting in Alabama . . . have consistently concluded that when the duty allegedly breached is the duty created by the contract itself as opposed to the general duty of care owed to everyone, the court must treat the claim as a breach of contract and not as a tort." *Halbert*, 402 F. Supp. 3d at 1234. Thus, when an offending party violates a contractual obligation, the wronged party may bring a breach of contract claim, but not a parallel negligence claim. Because the law does not recognize negligence claims resulting from a breach of contract, McConico cannot recover on the theory that Green Dot was negligent in the way it serviced his money card account. *See Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012).

McConico's contention that Green Dot negligently maintained the money card enrollment webpage also fails as a matter of law[5] because Green Dot did not

---

[5] In support of his motion for partial summary judgment on this claim, McConico submitted four online news or magazine articles. Doc. 99 at 8–23. One article from 2013 addresses pricing issues associated with Walmart's retail webpage (Doc. 99 at 8–14), and another from 2015 relates to the Green Dot and Walmart business partnership. Doc. 99 at 8–16. The last two were published in 2016 and discuss a "glitch" in which money card customers were unable to access funds or statements or to activate their cards. Doc. 99 at 17–23. These articles do not assist McConico in proving his claims. First, they are inadmissible hearsay. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Second, they are irrelevant to the facts supporting McConico's claims in as much as they do not relate to the money card enrollment webpage or application process. For these reasons, Defendants' motion to strike (Doc. 107) is due to be granted.

owe any special duty to McConico and there is no evidence it breached any duty it did have. "The existence of a duty to the plaintiff is fundamental to a negligence claim." *Graveman v. Wind Drift Owners' Ass'n, Inc.*, 607 So. 2d 199, 203 (Ala. 1992). "In determining whether a duty exists in a given situation . . . courts should consider a number of factors, including public policy, social considerations, and foreseeability. . . . The essential question is whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993) (citations omitted). Moreover, the law does not impose a fiduciary duty on banks to the public at large, only any duties arising from the standard creditor-debtor relationship. *See K&C Dev. Corp. v. AmSouth Bank*, 597 So. 2d 671, 675 (Ala. 1992); *Patrick v. Union State Bank*, 681 So. 2d 1364, 1369 (Ala. 1996).

Because Green Dot did not have any heightened duty to McConico as a potential customer, the court examines his negligence claim under a general duty standard. In general, "every person owes every other person a duty imposed by law to be careful not to hurt him." *Smitherman*, 622 So. 2d at 324. Under that standard, there is no evidence that Green Dot breached any duty to McConico when its webpage froze. Additionally, even if Green Dot somehow breached a duty, there is no evidence that Green Dot caused the breach instead of, for example, an interruption in McConico's connection to the internet. "Mere conclusory allegations or

14

speculation that fact issues exist will not defeat a properly supported summary judgment motion, and bare argument or conjecture does not satisfy the nonmoving party's burden to offer facts to defeat the motion." *Crowne Invs., Inc. v. Bryant*, 638 So.2d 873, 878 (Ala. 1994). For these reasons, McConico's negligence claim as it relates to the maintenance of the website fails and his motion for partial summary judgment as to this claim is due to be denied.

### 2.   *Walmart and Green Dot*

McConico also brings claims of negligent training or supervision against both Green Dot and Walmart. McConico first alleges that Walmart failed to supervise Green Dot, but he has not shown that Walmart had any duty to supervise Green Dot. "Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001). To prove negligent supervision, a plaintiff must demonstrate that the master knew, or in the exercise of ordinary care should have known, that its servant was incompetent. *See Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288 (N.D. Ala. 2013). There is no evidence that Walmart exercised any control over Green Dot's administration of the money card program or maintained the money card enrollment webpage. In fact, the undisputed evidence is just the opposite: Walmart played no role in these activities. Doc. 109-4 at 1. Because he has not demonstrated a master-servant relationship between Green

Dot Bank and Walmart, McConico's negligent supervision claim against Walmart fails.

Green Dot also is due summary judgment on any negligent supervision claim. While McConico's claim here is unclear, he seems to contend that Green Dot negligently trained or supervised its employees in the administration of the money card program or the management of the enrollment website. "[I]mplicit in the tort of negligent . . . training[] and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff's injury. *Jones Exp., Inc. v. Jackson,* 86 So. 3d 298, 305 (Ala. 2010) (citation omitted). McConico has not produced any evidence of a wrongful act on the part of a Green Dot employee. For this reason, his negligent training and supervision claim against Green Dot fails.

**C.    Fraud**

To establish fraud, McConico must demonstrate a false representation concerning a material existing fact, reliance upon that representation, and resulting damage. *Standifer v. Best Buy Stores, L.P*., 364 F. Supp. 3d 1286, 1298 (N.D. Ala. 2019). "A false representation even if made innocently or by mistake operates as a legal fraud if it is a material fact that is acted upon with belief in its truth." *Id*.

The essence of McConico's fraud claims is that Defendants "baited" him into

believing (1) that he was doing business with Walmart, and (2) that he would be allowed to spend the funds in his account even if there was an identification issue. Doc. 1-1 at 3–5; Doc. 66 at 6; Doc. 99 at 2. McConico has not demonstrated that Walmart made any representation of the sort. In fact, there is no evidence that Walmart made any false representations, and the record evidence negates McConico's claims that Walmart lured him into believing that it operated the money card or would permit him to spend the funds in his account without identification. Rather, the cardholder agreement reveals both that Walmart does not control the money card account and that identification might be required. Doc. 109-5 at 3 & 12.

Likewise, McConico has not presented any evidence demonstrating that Green Dot made any false representations. Instead, the evidence shows that Green Dot's actions conformed with the representations it made to McConico in the cardholder agreement. *See* Doc. 109-5. Because a false representation is a requisite to proving fraud, *Marshall Durbin Farms, Inc. v. Landers*, 470 So. 2d 1098, 1101 (Ala. 1985), McConico's fraud claim against Green Dot fails as a matter of law.

Any fraudulent suppression claim also fails. "To succeed on a fraudulent suppression claim, a plaintiff must demonstrate: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; [and] (4) action by the plaintiff to his or her injury." *Standifer*, 364 F. Supp. 3d at 1300 (citations omitted). In the

context of fraud claims, "the well settled duty-to-read rule . . . states that a plaintiff has a general duty to read the documents received in connection with a particular transaction along with a duty to inquire and investigate." *Alfa Life Ins. Corp. v. Reese*, 185 So. 3d 1091, 1103 (Ala. 2015) (internal quotation marks and citation omitted).  "[A]ny adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction." *Id*.

McConico cannot successfully argue that Walmart or Green Dot concealed any material facts from him.  McConico claims that he was never given the opportunity to read the cardholder agreement due to a website malfunction, but he has not presented any evidence that Defendants caused the malfunction or were even aware of it.  And there is no evidence that McConico did anything to investigate the cardholder agreement or notify Walmart or Green Dot of his inability to read it.  McConico likewise has not presented any evidence that Walmart or Green Dot thwarted his attempt to obtain the agreement.  Instead, the evidence shows that McConico checked a box on the enrollment webpage indicating that he had read the cardholder agreement and agreed to its terms. Doc. 109-10 at 2–3.  McConico cannot avoid the effect of this choice by now claiming he was not informed of the cardholder agreement's terms. *See Banks v. SCI Ala. Funeral Servs., Inc*., 801 So. 2d 20, 25 (Ala. Civ. App. 2001) (finding that a literate person who signs a document without

reading it cannot avoid the effect of his signature because he is not informed of the document's contents). Because there is no evidence that McConico conducted any investigation to discover the terms of the cardholder agreement after the alleged webpage error and he has not presented any evidence demonstrating that Walmart or Green Dot fraudulently concealed the agreement, his claim for fraudulent suppression fails.

## IV. CONCLUSION

For these reasons, it is ORDERED that McConico's Motion for Partial Summary Judgment (Doc. 99) is DENIED, and Walmart and Green Dot's Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 107) is GRANTED.

Walmart and Green Dot's Motion for Summary Judgment (Doc. 108) will be granted by separate order.

DONE and ORDERED on March 23, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE